UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22498-HOEVELER

RICHARD SOL,

     Plaintiff,

v.

CITY OF MIAMI et al.

     Defendants.

ORDER ON MOTIONS TO DISMISS
THE CROSS-CLAIMS

BEFORE the Court are two motions filed by the City of Miami and Miami police officer Jose Estevez. The first is a motion to dismiss the cross-claims of Cory Fritzler [ECF No. 111]; the second is a motion to dismiss the cross-claims of Fireman's Fund Insurance Company [ECF No. 112]. The motions are fully briefed and the Court heard oral arguments March 4, 2011. For the reasons that follow, the motion to dismiss Cory Fritzler's cross-claims is granted in part, and denied in part. And the motion to dismiss Fireman's Fund's cross-claims is granted in part, and denied in part.

## Background

This case arises out of a February 2008 collision between the Contender Fishing Vessel and a Miami Police boat in Miami Harbor. At the time of the accident, Cory Fritzler was piloting the

Contender, and Officer Estevez was piloting the police boat. Richard Sol, a passenger on the Contender, was the only person injured from the collision.

Sol sued Officer Estevez, the City of Miami, Cory Fritzler, and Fireman's Fund Insurance Company (which was the Contender's and Cory Fritzler's "uninsured water craft" insurer). In September 2010, Sol obtained monetary settlements from Cory Fritzler and Fireman's Fund and then dismissed his claims against all defendants.[1] Fritzler and Fireman's Fund now seek reimbursement or partial reimbursement from the City of Miami and/or officer Estevez for the money they paid in the settlement with Sol. Their cross-claims for indemnity and/or contribution are the only issues remaining.

In his cross-claim, Fritzler asserts four counts. Counts 1 and 2 are directed to the City of Miami. In Count 1, Fritzler seeks indemnification from the City for the money Fritzler paid to Sol; in Count 2, Fritzler claims that, in the alternative to indemnity, the City is liable for its share of the settlement under the maritime theory of contribution for concurrent tortfeasors.[2] In Counts 3 and 4, Fritzler asserts the same indemnity and contribution claims against Officer Estevez. In its cross-claim,

_____

[1] Thus, Sol is no longer part of this lawsuit.

[2] All parties agree the indemnification and contribution issues are governed by general maritime law rather than state law.

2

Fireman's Fund asserts the same indemnification and contribution claims against both the City and Estevez. Neither of the cross-defendants answered the cross-claims. They instead filed motions to dismiss.

## I. Legal standard

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2). <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Though the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." <u>Id.</u> "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." <u>Wilchombe v. TeeVee Toons, Inc.</u>, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

## II. Analysis

### A. Indemnity

The City of Miami makes two arguments in favor of dismissing Fritzler's complaint. First, the City argues that Fritzler cannot seek indemnity from the City because Fritzler's liability to Richard Sol--and payment of settlement money to Sol--were based on Fritzler's *own* fault in the accident. Although it is undisputed Fritzler is not vicariously liable for the torts of the City of

3

Miami, Fritzler contends that general maritime law recognizes a second theory for indemnification--*i.e.*, that he can seek indemnification from the City because he is a "non-negligent tortfeasor."

The maritime cause of action for indemnity was discussed in <u>Columbus-McKinnon Corp v. Ocean Products Research, Inc.</u>, 792 F. Supp. 786 (M.D. Fla. 1992):

> Indemnity is a legal principle where one tortfeasor may shift its entire loss onto another tortfeasor provided that the latter should appropriately answer for the entirety of the loss. <u>Hardy v. Gulf Oil Corp.</u>, 949 F.2d 826, 829 (5th Cir. 1992). . . . [One theory on indemnity] allows a vicariously liable or non-negligent tortfeasor to be entitled to indemnity "from a co-debtor guilty of actual fault." <u>Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA</u>, 761 F.2d at 236. In <u>Hardy</u> that Court interpreted the <u>Marathon Pipe Line</u> theory to apply equally to non-negligent as well as vicariously or constructively liable tortfeasors. <u>Hardy</u>, 949 F.2d at 833. Hardy was not willing to expand the interpretation of the theory since "the term 'non-negligent tortfeasor' applies only to those defendants on which the law imposes responsibility even though they committed no negligent acts." <u>Id</u>.

<u>Id.</u> at 788. Fritzler focuses on the words of <u>Colombus-McKinnon</u> that: "*indemnity can be had by a non-negligent defendant or [by a defendant] who has vicarious liability*." <u>Id</u>. (emphasis added). Fritzler argues that the conjunction "or" indicates there are *two* independent circumstances in which Fritzler could seek indemnification, either: (1) if he were vicariously for the City's negligence, or (2) if he were a non-negligent tortfeasor. Fritzler

alleges he is a non-negligent tortfeasor. This interpretation of Colombus-McKinnon does not hold up to scrutiny. In reality, the only circumstance in which the general maritime law allows a party to seek indemnification is when that party paid damages based on vicarious liability. This is clear from the Fifth Circuit case of Hardy v. Gulf Oil Corp., 949 F.2d 826, 833-834 (5th Cir. 1992), which the Colombus-McKinnon court relied upon. In Hardy, the party seeking indemnification made essentially the same argument Fritzler makes here: that it was "was not negligent, and therefore is entitled to indemnity under Marathon Pipe Line." Id. at 833. The Fifth Circuit rejected this view of maritime jurisprudence, writing that:

> This argument construes [Marathon Pipe Line] too broadly. Certainly, the Marathon Pipe Line theory of indemnity applies equally to "non-negligent tortfeasors" as well as to vicariously liable tortfeasors. Id. at 236. However, the term "non-negligent tortfeasor," as used in Marathon Pipe Line, applies only to those defendants *on which the law imposes responsibility* even though they committed no negligent acts.

Id. (emphasis added). Under Hardy and Marathon Pipe Line, a "non-negligent tortfeasor" equates with a party upon whom "the law imposes responsibility even though [that party] committed no negligent acts." See id. The only claim in Sol's complaint against Fritzler was Count III, which alleged that Fritzler was negligent for speeding and failing to yield. Those were claims concerning Fritzler's negligence. Under no circumstance would Fritzler be

5

legally responsible for the City's negligence, and he therefore has no cause of action for indemnity against the City. For the same reasons, Fireman's Fund also cannot assert a claim for indemnity against the City, because Fireman's Fund had no legal responsibility to answer for the City's negligence. The City of Miami's motions to dismiss the indemnity cross-claims are granted.

**B.    Contribution**

A cause of action for contribution exists between concurrent tortfeasors where one tortfeasor has settled with the injured party, and the other tortfeasor has not, and the amount of contribution turns on the percentage of fault for each joint tortfeasor. Great Lakes Dredge & Dock Co. v. Chevron Shipping Co., 957 F.2d 1575, 1581 (11th Cir. 1992); Self v. Great Lakes Dredge and Dock Co., 832 F.2d 1540, 1546 (11th Cir. 1987). The traditional view in general maritime law is that "there can be no contribution between concurrent tortfeasors unless they share a 'common legal liability' toward the plaintiff." Simeon v. T. Smith & Son, 852 F.2d 1421, 1434 (5th Cir. 1988). The City initially moved to dismiss Fritzler's contribution claim because Fritzler alleged, in part, that the City was "solely" responsible for Sol's injuries, whereas a contribution claim requires that tortfeasors have a "common liability." But Fritzler also alleged that he and the City might share responsibility for the accident. That allegation satisfies the "common legal liability" requirement. In its reply

brief and at the hearing, the City acknowledged that Fritzler has stated a claim for contribution. Thus, the City's motion to dismiss Fritzler's contribution claim is denied.

Regarding Fireman's Fund's contribution claim against the City, counsel for the City argued at the hearing that it would be redundant for both Fireman's Fund and its insured, Cory Fritzler, to assert dual contribution claims for the very same loss (the settlement to Sol). The City submits that, if the evidence proves the City was partially responsible for Sol's injuries, Fritzler possesses all the rights that Fireman's Fund needs to recover contribution from the City of Miami. The details about the settlement, however, including who paid what to Sol--whether it was Fireman's Fund, Cory Fritzler, or both--remain unclear. If the contribution cross-claims are redundant, as the City claims, then it won't prejudice the City to defend against both of them. And while there appears to be no obvious advantage for both the insurer and the insured to be involved in this lawsuit, on the present record I see no reason to dismiss the claims of Fireman's Fund. Accordingly, the City's motion to dismiss Fireman's Fund's contribution claim is denied.

## C.   Claims against Officer Estevez

Based on the findings above, the only claim that could potentially proceed against Officer Estevez is the claim for contribution. The City submits that the contribution claim against

7

Estevez is barred by qualified immunity unless Fritzler can demonstrate Estevez violated a clearly-established constitutional or statutory right. Fritzler does not quarrel with the City's basic position that state agents acting under the color of state law are entitled to qualified immunity, even in the maritime-tort context.[3] Although there are surprisingly few cases addressing qualified immunity for non-constitutional maritime torts, the City's position that qualified immunity applies seems to be the law in the Eleventh Circuit. See Harrell v. United States, 875 F.2d 828, 831 (11th Cir. 1998).

The parties agree the qualified immunity issues in this maritime tort case are governed by the same legal principles that would apply if, for example, Estevez had been sued under 42 U.S.C. § 1983 for *terra firma* civil rights violations. The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, Anderson v. Creighton, 483 U.S. 635, 638-39 (1987), "protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (internal citation and quotation marks

---

[3] In previous motions in this lawsuit--when qualified immunity came up with respect to Richard Sol's claims against Estevez--Sol argued that qualified immunity does not apply in the maritime tort context. Under that theory, federal maritime law supercedes the doctrine of qualified immunity just as it supercedes aspects of state sovereign immunity. Fritzler does not make this argument.

omitted). "[T]o receive qualified immunity, an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009) (quoting Lee, 284 F.3d at 1194). If the official was acting within the scope of his discretionary authority--and I find that Officer Estevez was acting in his discretionary authority when he was driving the police boat[4]--"the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." Id.

The next part of the qualified immunity framework is governed by Saucier v. Katz, 533 U.S. 194, 201 (2001).[5] Under Saucier, qualified immunity exists unless the plaintiff can establish two things: first, that under the plaintiffs' version of the facts, the defendant's actions violated a constitutional right; second, that the right violated was "clearly established" at the time. Id.; Vinyard v. Wilson, 311 F.3d 1340, 1349-50 (11th Cir. 2002). To demonstrate that a right was "clearly established," the plaintiff must show that when the defendant acted, the law established the

---

[4] See McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995) ("[T]he term 'discretionary authority' [includes] actions that do not necessarily involve an element of choice."); Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (quotations omitted) (holding that "qualified immunity was available to a government official whose actions may be ministerial so long as the official's actions (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.")

[5] This framework is not perfectly suited to address non-constitutional maritime tort cases, but it will have to do.

contours of the right so clearly that a reasonable officer would have known his acts were unlawful. Anderson, 483 U.S. at 640. Because "[t]he line between lawful and unlawful conduct is often vague," Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) (modified, 14 F.3d 583 (11th Cir. 1994)), a police officer is not liable for his misconduct unless the plaintiff can point to pre-existing decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the highest court of the state (in this case, the Florida Supreme Court) that would have provided notice to the police officer that what he did was illegal. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 (11th Cir. 2000); McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007). In the absence of "clearly established" case law, in some instances a plaintiff can attempt to show that the federal right in question is defined by law with such "obvious clarity" that *any* police officer would have known his actions were unlawful, even without a precedential judicial opinion saying so. See, e.g., United States v. Lanier, 520 U.S. 259, 271 (1997).

Because Estevez was working in the scope of his employment and in a discretionary function when he was patrolling Miami Harbor, he is entitled to qualified immunity unless Fritzler can demonstrate he violated clearly established law. Fritzler contends that federal maritime law spells out with obvious clarity how skippers must conduct themselves within navigable waterways of the United States.

For example, Fritzler submits that Estevez violated various maritime "rules of the road" by speeding, failing to have proper running lights and/or signals on the police boat, failing to maintain a proper look out, and so forth.[6] According to Fritzler, Estevez's violation of these navigation rules establishes the first prong of <u>Sacier v. Katz</u>. Further, Fritzler contends these navigational laws were so obvious and well-known that any reasonable police-boat operator would have known them.

Unfortunately, there are few cases discussing the qualified immunity defense in this setting, and the lawyers acknowledge the absence of precedent. I previously dismissed without prejudice Richard Sol's claims against Estevez because, "the factual allegations in the complaint do not overcome Mr. Estevez's qualified immunity as a Miami police officer." In particular, Sol had not even alleged in his pleadings that Estevez willfully or wantonly violated Sol's rights. Fritzler has also failed to allege Estevez willfully or wantonly violated the navigational rules. Instead of amending his complaint to include "willful and wanton"-type allegations, Fritzler maintains that such allegations are not necessary. He claims he already pled everything necessary to

---

[6] Specifically, Fritzler alleges in the pleadings that the police vessel did not comply with "observance of good seamanship and applicable navigational rules, including but not limited to those codified at 33 U.S.C. §§ 2201-2038 and/or 33 U.S.C. §§ 1601-1608, as well as the applicable provisions of the Code of Federal Regulations." Compl. ¶ 8, ECF No. 108.

overcome qualified immunity: *i.e.*, that Estevez did, in fact, violate maritime navigation rules, and that those navigation rules were clearly established.

Nevertheless, I am simply not convinced Estevez's alleged violation of navigational rules and customs, even ones governed by federal maritime law, would eliminate his immunity from suit in an ordinary negligence case. Even assuming Estevez's non-compliance with the "rules of the road" could satisfy prong one of Saucier,[7] it is impossible to endorse an outcome in which Estevez's negligent violation of what amount to traffic regulations could give rise to personal liability, simply because Sol's injury happened on the waterways. Qualified immunity protections from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (internal citation and quotation marks omitted). The Court finds that neither Fritzler nor Fireman's Fund have alleged facts about Estevez's conduct that would overcome this standard. Accordingly, it is hereby:

**ORDERED AND ADJUDGED:** The motion to dismiss the cross-claims of Cory Fritzler is granted in part, and denied in part, as follows: Fritzler's claims against Officer Estevez are dismissed;

---

[7] I note that in ordinary civil rights suits against police officers, qualified immunity applies unless the plaintiff alleges a violation of the *plaintiff's* federally protected rights--not merely a violation of something akin to a regulatory requirement imposed by maritime law upon all skippers alike. In reality, the latter can't seriously be seen as granting a federal "right" to the plaintiff in the first place.

Fritzler's indemnity claim against the City of Miami is also dismissed; Fritzler's contribution claim against the City shall proceed. Further, the City's motion to dismiss the cross-claims of Fireman's Fund is granted in part, and denied in part, as follows: Fireman's Fund's claims against Officer Estevez are dismissed; Fireman's Fund's indemnity claim against the City of Miami is also dismissed; Fireman's Fund's contribution claim against the City of Miami shall proceed.

**DONE AND ORDERED** in Miami, Florida, April 8, 2011.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT JUDGE